WK:EEA
F. #2018R01685

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH
aconde@essexglobalcapital.com
AND bconde@essexglobalcapital.com
THAT ARE STORED AT
PREMISES CONTROLLED BY
ENDURANCE INTERNATIONAL
GROUP, INC., sago310@aol.com
THAT IS STORED AT PREMISES
CONTROLLED BY OATH
HOLDINGS, INC. and li@mbllc.net
THAT IS STORED AT PREMISES
CONTROLLED BY RACKSPACE
US, INC.

- - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   FEB 04 2019   ★

LONG ISLAND OFFICE

TO BE FILED UNDER SEAL

APPLICATION FOR
SEARCH WARRANTS FOR
INFORMATION IN
POSSESSION OF PROVIDERS

Case No. 19   108 M J

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR SEARCH WARRANTS

I, Craig A. Minsky, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for search warrants for

information associated with aconde@essexglobalcapital.com and

bconde@essexglobalcapital.com (collectively, the "ENDURANCE SUBJECT EMAILS") that

are stored at the premises controlled by Endurance International Group, Inc. ("Endurance"), an

email provider headquartered at 10 Corporate Drive, Burlington, Massachusetts 01803;

information associated with sago310@aol.com (the "OATH SUBJECT EMAIL") that is stored

at the premises controlled by Oath Holdings, Inc. ("Oath"), an email provider headquartered at

22000 AOL Way, Dulles, Virginia 20166; and information associated with li@mbllc.net (the

"RACKSPACE SUBJECT EMAIL") that is stored at premises controlled by Rackspace US, Inc.

("Rackspace"), an email provider headquartered at 1 Fanatical Place, San Antonio, Texas 78218

(collectively, the "SUBJECT EMAILS"). The information to be searched is described in the

following paragraphs and in Attachments A1, A2 and A3. This affidavit is made in support of an

application for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to

require Endurance, Oath and Rackspace to disclose to the government copies of the information

(including the contents of communications) further described in Section I of Attachments B1, B2

and B3. Upon receipt of the information described in Section I of Attachments B1, B2 and B3,

government-authorized persons will review that information to locate the items described in

Section II of Attachments B1, B2 and B3.

      2.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and

have been since 2006. Since July 2014, I have been assigned successively to two of the FBI's

securities and corporate fraud units, both of which focus their investigations on securities fraud,

mail fraud, and wire fraud offenses. In my capacity as an FBI Special Agent, I have participated

in numerous investigations into securities fraud, mail fraud, wire fraud, and money laundering,

during the course of which I have conducted or participated in surveillance, execution of search

warrants and arrest warrants, and debriefings of victims, informants and cooperating witnesses. I

am aware that white collar criminals commonly use electronic means of communication in

furtherance of their criminal activities, including but not limited to electronic mail ("email") and

text messages. As a result of my training and experience, I am familiar with the techniques and

methods of operation used by individuals involved in criminal activity to conceal their activities

from detection by law enforcement authorities.

3.      I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation primarily from: (a) my personal participation in this investigation, (b) reports made to me by other law enforcement authorities and regulators, (c) interviews with witnesses and victims and (d) review of certain emails and other records and reports.

4.      This affidavit is intended to show merely that there is probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that criminal offenses including securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 18, United States Code, Section 1348; mail fraud, in violation of Title 18, United States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343; conspiracy to commit the above offenses, in violation of Title 18, United States Code, Sections 371 and 1349; and money laundering and money laundering conspiracy, in violation of Title 18, United States Code, Sections 1956 and 1957 (hereinafter collectively referred to as "Target Offenses"), have been committed by Benjamin Conde, Anthony Conde and Larry Isen (hereinafter collectively referred to as the "Co-Conspirators"), and others, including those who are as yet unknown.  There is also probable cause to search the information described in Attachments A1, A2 and A3 for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachments B1, B2 and B3.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a),

(b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that –

has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

PROBABLE CAUSE

I.      Background

        7.      The FBI is currently investigating a fraudulent scheme involving the

Target Offenses that began in approximately 2017.  The Co-Conspirators, together with others,

defrauded investors and potential investors in a U.S. publicly traded company by unlawfully

manipulating the stock of that company.  The Co-Conspirators and others furthered this scheme

through, inter alia, false and/or misleading statements and omissions to investors and potential

investors relating to the stocks and/or the ownership or control of such stocks, and the

engineering of artificial price movements and trading volume in the stocks.  The relevant stocks

included, but were not limited to, Renewable Energy and Power, Inc. ("RBNW").

        8.      The Co-Conspirators promoted RBNW primarily through a "boiler room"

business based in Melville, New York.  The business name of this boiler room has changed over

the past few years, from "Dacona Financial" to "Power Traders Press" to "Trade Masters Pro"

to, most recently, "My Street Research."[1]  For the sake of simplicity, the boiler room will

generally be referred to herein as "PTP."  Despite changes in its name, the physical location of

the boiler room has remained at the same Melville, New York address.

---

[1]      Companies involved in stock fraud schemes often change their name, internet
domain name, and type of business so that their stock can be promoted again and again to
unsuspecting buyers.

9.      PTP and its iterations maintained an online presence with various websites, in which the boiler room held itself out, in sum and substance, as an unbiased stock research firm. Most recently, the boiler room used the website www.trademasterspro.com.

10.     In addition to the Co-Conspirators associated with or employed by the boiler room, other financial professionals – including securities brokers-dealers, traders, and/or officers or directors of the publicly-traded companies – participated in and profited from the fraudulent scheme. These Co-Conspirators' roles at some of the relevant companies helped them obtain shares in those companies that ultimately the Co-Conspirators used in manipulative trades to increase the price of the stocks and/or sold at a profit.

11.     Four broker-dealers, E-Trade Financial Corporation, Inc., Scottrade, Inc., Interactive Brokers, LLC, and Alpine Securities Corporation, Inc., were used by the participants in the charged scheme. Anthony Conde and Benjamin Conde held accounts at Interactive Brokers and Alpine Securities that they used to liquidate their shares in RBNW. PTP held accounts through nominees[2] at E-Trade Financial Corporation, Inc., and Scottrade, Inc., that it used to manipulate RBNW shares. Since July 2017, seventeen individuals affiliated with PTP have been charged in this District with, among other crimes, conspiring to manipulate the stock of various U.S. publicly traded companies. Thus far, twelve of these individuals have pleaded guilty in connection with these charges.

12.     Company insiders who engage in share price manipulation and make false or misleading statements or omissions to investors and potential investors often enlist promoters and stock brokers to help achieve the goals of their unlawful schemes. Promoters disseminate

_____

[2]      Here, a nominee refers to an individual who cedes control of his or her trading account to a Co-Conspirator without any direct participation on the part of the nominee in the alleged scheme.

and promote the false statements and upbeat predictions about a company so as to induce

unwitting members of the public to purchase the company's shares.  Stock brokers and boiler

room employees advocate for the purchase of the company's stocks to their clients, often

misleading their clients in order to secure their acquiescence in the purchase.  The voluminous

trading that results from the promoters' and stock brokers' efforts makes the securities appear

both highly desirable and highly liquid (a term meaning that an asset is easy to buy or sell),

which in turn causes even more members of the public to purchase the stock.  In this way,

insiders and their co-conspirator promoters and brokers cause spikes in the company's share

price.  Generally in these schemes, the promoters, stock brokers and boiler room employees

involved are often compensated with free-trading shares of company stock.  Those promoters

and brokers then usually sell the shares when the share price peaks, thereby making a profit.

II.     Co-Conspirators and Entities Pertinent to the Instant Application

13.     Benjamin Conde, a resident of Fairfield, New Jersey, is the Chief

Executive Officer ("CEO") of Essex Global Investment Corporation, Inc. ("Essex Global"), and

the President of Facultas Capital Management, LLC ("Facultas Capital").

14.     Anthony Conde, a resident of Hoboken, New Jersey and the brother of

Benjamin Conde, worked at Essex Global as an assistant.

15.     Christopher Danzi, a resident of Totowa, New Jersey, is an employee at

Essex Global.

16.     Larry Isen, a resident of San Diego, California, controlled Marketbyte

LLC.  Marketbyte facilitated the transfer of shares and distribution of proceeds between

Conde and PTP.  Isen was a business associate of Anthony and Benjamin Conde.  Benjamin

Conde controlled Facultas Capital Management, LLC and Essex Global Investment Group to

manipulate RBNW's stock.  As described below in paragraph 30, as a group Isen, Anthony

Conde and Benjamin Conde made large sums from the manipulation of RBNW stock.

17.     Essex Global was incorporated in Nevada in 2013 by Benjamin Conde.

Benjamin Conde opened a trading account in Essex Global's name with Alpine Securities in

approximately August 2015.

18.     Facultas Capital was incorporated in New Jersey in 2015 by Benjamin

Conde.  Benjamin Conde opened a trading account in Facultas Capital's name with

Interactive Brokers in approximately December 2014.

19.     Renewable Power and Energy, Inc. (RBNW), a corporation formed in

approximately October 2012, is based in Nevada and, according to its 2016 10-K filing with

the SEC, plans to "provide renewable energy that is competitive with fossil fuels by

employing proprietary new technologies and combining them with existing solar and wind

power and LED lighting."

III.    The Fraudulent Stock Manipulation Scheme

     A.     Background

20.     Beginning in approximately 2017, the Co-Conspirators began trading

large blocks of microcap[3] shares in RBNW, a U.S. publicly traded company.   Larry Isen and

his company, Marketbyte, introduced Anthony Conde and Benjamin Conde to the owners of

PTP.  As a result, Benjamin Conde and Anthony Conde hired PTP to engage in manipulative

trading and a "cold call" campaign to drive up the price of the shares.  As victim investors –

---

[3]     The term "microcap" generally refers to a publicly traded company in the United
States that has a market capitalization – the price of the company's shares multiplied by the
number of shares outstanding in the market – of between approximately $50 million and $300
million.

many of them senior citizens – purchased shares, PTP, Benjamin Conde and Anthony Conde simultaneously sold their own shares in RBNW and ultimately obtained millions of dollars in gross trading profits. This type of fraudulent scheme often is referred to colloquially as a "pump and dump" scheme.

21.    To promote the relevant stocks, the Co-Conspirators and others engaged in both cold-calling victims and manipulative trading in order to create the appearance that there was a market in RBNW stocks, and timed the sales of their shares to coincide with purchases of the shares by victims. The manipulative trading consisted primarily of frequent "wash" and "matched" trades with respect to RBNW stocks as part of the Co-Conspirators' unlawful scheme. "Wash" trading refers to the unlawful, manipulative trading practice of purchasing shares through one broker and selling them through another broker, which allows the trader to create the appearance of trading in the stock without changing his or her market position. "Matched" trades are purchases and sales of securities that match each other in price, volume and time of execution and involve a related third person or party who places one side of the trade. For example, a "matched" trade takes place when Investor A buys 100 shares at $5.00 per share of Company A through a broker, while Investor B, who coordinates with Investor A, simultaneously sells 100 shares at $5.00 per share of Company A through a broker. "Wash" and "matched" trades are illegal and are used to create the appearance that a stock's price and volume rose as a result of genuine market demand for the security.

22.    In addition to manipulative trading, PTP made numerous calls to potential victims. PTP has used more than 20 landline telephone numbers and multiple cellular telephone numbers in connection with the operation. Generally, once a victim

indicated a willingness to purchase recommended stock, the victim was called repeatedly. During such calls, the victim generally was advised to log in to his or her trading account and to place purchase orders of stock. In some cases, PTP also charged the victims for "subscriptions" to its purported stock recommendation service.

IV.     Trading in the Manipulated Stocks

23.     Between March 2017 and July 2017, the Co-Conspirators engaged in a pump and dump scheme with respect to RBNW, among other stocks. Often, the Co-Conspirators carried out manipulative trading, such as wash trades and match trades, in those stocks in close temporal proximity to each other.

24.     Analysis of trading activity show that the Co-Conspirators carried out manipulative trading in RBNW stock. The Co-Conspirators used a cold-call promotional campaign to increase market activity for RBNW stock. Between March 1, 2017 and March 24, 2017, RBNW traded on an average daily volume of only 56 shares. On March 27, 2017, RBNW stock was trading at $0.22 per share. Between March 27, 2017 and March 29, 2017, alone, however, RBNW traded on an average daily volume of 619,513 shares. On April 5, 2017, over 1.3 million shares of RBNW stock were traded. Between March 27, 2017 and July 11, 2017, approximately 38 PTP victims purchased a total of 6,297,318 RBNW shares for approximately $2,453,685.47.

25.     On or about the morning of March 27, 2017, telephone numbers associated with Benjamin Conde and Larry Isen were in contact with each other. Approximately one hour later, a call took place between a telephone number associated with Larry Isen and a telephone number associated with an owner of PTP. Approximately five minutes later, a telephone number associated with Benjamin Conde and a telephone number associated with

Chris Danzi at Essex Global were in contact. Approximately five minutes after that call, a call between the number associated with Benjamin Conde and a landline associated with Alpine Securities occurred. One minute later, a matched trade occurred – namely, a brokerage account controlled by PTP purchased 10,000 shares of RBNW stock and the Essex Global account with Alpine Securities sold 10,000 shares.

26.     On or about the morning of April 4, 2017, telephone numbers associated with Anthony Conde and Chris Danzi were in contact with each other. A few minutes later, calls occurred between telephone numbers associated with Benjamin Conde and Larry Isen; then, a call between Benjamin Conde and Anthony Conde; and finally, a call between Anthony Conde and Alpine Securities' main line. Immediately thereafter, a PTP victim, known hereafter as Victim 1, purchased 2,500 shares of RBNW stock. At the exact same time, Facultas Capital's Interactive Brokers account sold 2,500 shares of RBNMW stock. Shortly thereafter, a call between telephone numbers associated with Benjamin Conde and Isen occurred. Approximately one minute later, the same victim, Victim 1, purchased 200,000 shares of RBNW stock and, at the exact same time, Alpine Securities executed a sale of 200,000 shares attributable to Essex Global.[4] This pattern of telephone calls and matched trades between the Co-Conspirators set forth above continued for the duration of the stock manipulation scheme.

27.     In addition, in order to generate volume and drive up the price per share, Benjamin Conde engaged in wash trades. These trades made it appear as though trades were between two independent entities when, in fact, there was no actual change in the ownership of

---

[4]     Brokerage firms will occasionally use a general firm trading account for ease of use during the trading day and then reconcile the trades with the respective purchasers' and sellers' accounts at the conclusion of the trading day.

the stocks. For example, on June 1, 2017, Benjamin Conde called the Interactive Brokers' main telephone line.[5] During the call, Benjamin Conde placed a sell order for 2,500 shares of RBNW out of his Facultas Capital account. Interactive Brokers executed the sale approximately one minute later. Simultaneously, a PTP-controlled account purchased the 2,500 shares.

28.     On June 27, 2017, a call was placed between telephone numbers associated with Benjamin Conde and Alpine Securities respectively. A few minutes later, a call between Benjamin Conde and Chris Danzi occurred. A few minutes after that, a call between Benjamin Conde's cell and Interactive Brokers main line occurred, which was recorded.[6] In that call, Benjamin Conde requested that a representative of Interactive Brokers execute on his behalf a 12,500-share purchase of RBNW shares out of Benjamin Conde's Facultas Capital Interactive Brokers account. Trading records obtained from the SEC confirm a 12,500-share purchase of RBNW's stock by the Facultas Capital account a few minutes later. At the exact same time as the Facultas Capital 12,500-share purchase, the Essex Global account at Alpine Securities sold 12,500 shares of RBNW stock.

29.     The Co-Conspirators made a substantial profit as a result of their stock manipulation scheme, of which Isen received approximately $234,336, and Anthony Conde and Benjamin Conde received approximately $967,800.

V.     Use of the SUBJECT EMAILS

30.     The Co-Conspirators used, among other things, e-mail communications to carry out their fraudulent scheme. As discussed below, certain Co-Conspirators used the

---

[5]     This call was recorded and I obtained a copy of it via a request to the SEC.
[6]     I obtained a copy of the recorded call via a request to the SEC.

SUBJECT EMAILS to communicate with other Co-Conspirators and with victims of the Co-Conspirators' fraudulent scheme.[7]

31.   I have reviewed subpoena returns provided by Endurance (see ¶ 1), and those records identify "Benjamin Conde" as the registrant for SUBJECT ENDURANCE EMAILS bconde@essexglobalinvestment.com and aconde@essexglobalinvestment.com. Further, the subpoena returns from Endurance list the OATH SUBJECT EMAIL, sago310@aol.com, as Benjamin Conde's backup email address.  I have also reviewed subpoena returns provided by Rackspace (see ¶ 1) for the RACKSPACE SUBJECT EMAIL, li@mbllc.net and those records identify "Levelogic, Inc."[8] as the subscriber for li@mbllc.net.

32.   Based on my review of the information produced in response to the April 26, 2017 Search Warrant, the RACKSPACE SUBJECT EMAIL, li@mbllc.net has been used in extensive communications involving Co-Conspirators.

33.   On March 13, 2017, Benjamin Conde emailed, among others, Larry Isen at his RACKSPACE SUBJECT EMAIL and Benjamin Conde's own ENDURANCE SUBJECT EMAIL, stating that the solar/renewable energy market was "Red Hot."  Larry Isen, using his

---

[7]      On April 26, 2017, United States Magistrate Judge Tiscione authorized a search warrant requiring the production of additional information associated with various email addresses, including joseph@powertraderspress.com, kmiller@powertraderspress.com, management@powertraderspress.com and robgilb11@gmail.com, li@mbllc.net and stephanie@strategiccapitalmarkets.com (the "April 26, 2017 Search Warrant").  I received and reviewed the information sought in the April 26, 2017 Search Warrant.  This information included email communications with the RACKSPACE SUBJECT EMAIL, as well as communications with Co-Conspirators regarding their fraudulent schemes.  The Co-Conspirators' communications included, among other things, details of manipulative trading activity, stock purchase agreements and control of nominee accounts to be used to effectuate the scheme.

[8]      Subpoena returns provided by Rackspace with respect to Levelogic, Inc. show that Larry Isen paid Rackspace for domain services for Levelogic, Inc.

RACKSPACE SUBJECT EMAIL, then forwarded Benjamin Conde's email to an owner of PTP, noting that the attached email was "ammo" for the owner's employees at PTP to use in pushing the purchase of stock with victims.  On April 6, 2017, Anthony Conde, using his ENDURANCE SUBJECT EMAIL, emailed an equity trader at Alpine Securities and carbon copied Benjamin Conde at his ENDURANCE SUBJECT EMAIL and OATH SUBJECT EMAIL, converting a block of RBNW shares into tradeable shares and depositing them into Essex Global's account at Alpine Securities.  On April 11, 2017, Anthony Conde, using his ENDURANCE SUBJECT EMAIL, requested that an Alpine Securities equity broker send a wire from Essex Global's Alpine Securities trading account in the amount of $275,000, copying Benjamin Conde's ENDURANCE SUBJECT EMAIL and OATH SUBJECT EMAIL.  On April 12, 2017, Benjamin Conde, using his OATH SUBJECT EMAIL, emailed the same Alpine Securities equity broker, asking her to sell 8,000 shares of RBNW at $0.44 per share that same day.  On May 19, 2017, Anthony Conde, using his ENDURANCE SUBJECT EMAIL, requested a wire in the amount of $140,000 from Essex Global's Alpine Securities account, copying Benjamin Conde's ENDURANCE SUBJECT EMAIL and OATH SUBJECT EMAIL.

BACKGROUND CONCERNING EMAIL

34.     Endurance, Oath and Rackspace provide a variety of on-line services, including email access, to the public.  Endurance, Oath and Rackspace allow subscribers to obtain email accounts at domain names like the email accounts listed in Attachments A1, A2 and A3.  Subscribers obtain an account by registering with Endurance, Oath or Rackspace.  During the registration process, Endurance, Oath and Rackspace ask subscribers to provide basic personal information.  Therefore, the computers of Endurance, Oath and Rackspace are likely to contain stored electronic communications (including retrieved and unretrieved email for

13

Endurance, Oath or Rackspace subscribers) and information concerning subscribers and their use of Endurance, Oath or Rackspace services, such as account access information, email transaction information, and account application information. Such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

35. An Endurance, Oath or Rackspace subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Endurance, Oath or Rackspace. Evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

36. Email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). Such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Even if subscribers insert false information to conceal their identity, this information can provide clues to their identity, location or illicit activities.

37. Email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is

14

inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the IP address used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

38.     In some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of emails between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. Such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

39.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. The information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, emails lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below,

email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

40. Based on the forgoing, I respectfully request that the Court issue the proposed search warrants. Because the warrants, if issued, will be served on Endurance, Oath and Rackspace who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrants at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrants.

## REQUEST FOR SEALING

41. I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to

all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

42.    Pursuant to 18 U.S.C. § 2705(b) and for the reasons stated above, I further request that the Court issue Orders commanding Endurance, Oath and Rackspace not to notify any person (including the subscribers or customers of the accounts listed in the attached warrants) of the existence of the attached warrants until further order of the Court.

Respectfully submitted,

Craig A. Minsky
Special Agent, FBI

Subscribed and sworn to before me on February ___, 2019

HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

ATTACHMENT A1
Property to Be Searched

This warrant applies to information associated with

aconde@essexglobalcapital.com and bconde@essexglobalcapital.com that are stored at premises

controlled by Endurance International Group, Inc. ("Endurance"), a company that accepts service

of legal process at 10 Corporate Drive, Burlington, Massachusetts 01803.

## ATTACHMENT A2
### Property to Be Searched

This warrant applies to information associated with sago310@aol.com that is stored at the premises controlled by Oath Holdings, Inc. ("Oath"), a company that accepts service of legal process at 22000 AOL Way, Dulles, Virginia 20166.

<u>ATTACHMENT A3</u>
Property to Be Searched

This warrant applies to information associated with <u>li@mbllc.net</u> that is stored at premises controlled by Rackspace US, Inc. ("Rackspace"), a company that accepts service of legal process at 1 Fanatical Place, San Antonio, Texas 78218.

## ATTACHMENT B1
### Particular Things to Be Seized

I.    Information to Be Disclosed by Endurance International Group, Inc. (the "Provider")

        To the extent that the information described in Attachment A1 is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A1:

        a.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

        b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

        c.    The types of service utilized;

        d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including emails with support services and records of actions taken.

II.     Information to Be Seized by the Government

        All information described above in Section I that constitutes fruits, contraband,

evidence and instrumentalities of violations of Title 15, United States Code, Sections 78j(b) and

78ff, and Title 18, United States Code, Section 1348; mail fraud, in violation of Title 18, United

States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343;

conspiracy to commit the above offenses, in violation of Title 18, United States Code, Sections

371 and 1349; and money laundering and money laundering conspiracy, in violation of Title 18,

United States Code, Sections 1956 and 1957, those violations involving Benjamin Conde,

Anthony Conde, Larry Isen and others, and occurring between January 1, 2017 and July 31,

2017, including, for each account or identifier listed on Attachment A1, information pertaining to

the following matters:

        a.      Fraudulent schemes to promote stock of various issuers, engage in market

manipulation relating to those stocks, sell the stocks at a profit and/or launder the proceeds of

those sales using, inter alia, bank and brokerage accounts, relating to Dacona Financial LLC,

Power Traders Press, Trade Masters Pro, My Street Research, Essex Global Investment,

Corporation, Inc. or Facultas Capital Management, LLC or any of those entities' employees,

representatives or affiliates, or Christopher Danzi, Anthony Conde, Benjamin Conde or Larry

Isen or any entities or bank or brokerage accounts associated with any of the foregoing names,

entities or individuals;

        b.      Evidence indicating how and when the email accounts were accessed or

used, to determine the geographic and chronological context of account access, use, and events

relating to the crime under investigation and to the email accounts' owners;

      c.      Evidence indicating the email accounts owners' state of mind as it relates to the crimes under investigation;

      d.      The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s); and

      e.      The identity of the person(s) who communicated with the user IDs about matters relating to the fraudulent scheme described in paragraph (a), including records that help reveal their whereabouts.

ATTACHMENT B2
Particular Things to Be Seized

I.    Information to Be Disclosed by Rackspace US, Inc. (the "Provider")

        To the extent that the information described in Attachment A2 is within the

possession, custody, or control of the Provider, including any emails, records, files, logs, or

information that has been deleted but is still available to the Provider, the Provider is required to

disclose the following information to the government for each account or identifier listed in

Attachment A2:

        a.      The contents of all emails associated with the account, including stored or

preserved copies of emails sent to and from the account, draft emails, the source and destination

addresses associated with each email, the date and time at which each email was sent, and the

size and length of each email;

        b.      All records or other information regarding the identification of the

account, to include full name, physical address, telephone numbers and other identifiers, records

of session times and durations, the date on which the account was created, the length of service,

the IP address used to register the account, log-in IP addresses associated with session times and

dates, account status, alternative email addresses provided during registration, methods of

connecting, log files, and means and source of payment (including any credit or bank account

number);

        c.      The types of service utilized;

        d.      All records or other information stored at any time by an individual using

the account, including address books, contact and buddy lists, calendar data, pictures, and files;

       e.      All records pertaining to communications between the Provider and any person regarding the account, including emails with support services and records of actions taken.

II.    Information to Be Seized by the Government

        All information described above in Section I that constitutes fruits, contraband,

evidence and instrumentalities of violations of Title 15, United States Code, Sections 78j(b) and

78ff, and Title 18, United States Code, Section 1348; mail fraud, in violation of Title 18, United

States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343;

conspiracy to commit the above offenses, in violation of Title 18, United States Code, Sections

371 and 1349; and money laundering and money laundering conspiracy, in violation of Title 18,

United States Code, Sections 1956 and 1957, those violations involving Benjamin Conde,

Anthony Conde, Larry Isen and others, and occurring between January 1, 2017 and July 31,

2017, including, for each account or identifier listed on Attachment A1, information pertaining to

the following matters:

        a.      Fraudulent schemes to promote stock of various issuers, engage in market

manipulation relating to those stocks, sell the stocks at a profit and/or launder the proceeds of

those sales using, inter alia, bank and brokerage accounts, relating to Dacona Financial LLC,

Power Traders Press, Trade Masters Pro, My Street Research, Essex Global Investment,

Corporation, Inc. or Facultas Capital Management, LLC or any of those entities' employees,

representatives or affiliates, or Christopher Danzi, Anthony Conde, Benjamin Conde or Larry

Isen or any entities or bank or brokerage accounts associated with any of the foregoing names,

entities or individuals;

        b.      Evidence indicating how and when the email accounts were accessed or

used, to determine the geographic and chronological context of account access, use, and events

relating to the crime under investigation and to the email accounts' owners;

      c.      Evidence indicating the email accounts owners' state of mind as it relates to the crimes under investigation;

      d.      The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s); and

      e.      The identity of the person(s) who communicated with the user IDs about matters relating to the fraudulent scheme described in paragraph (a), including records that help reveal their whereabouts.

ATTACHMENT B3
Particular Things to Be Seized

I.     Information to Be Disclosed by Oath Holdings, Inc. (the "Provider")

To the extent that the information described in Attachment A3 is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A3:

a.     The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.     All records pertaining to communications between the Provider and any person regarding the account, including emails with support services and records of actions taken.

II.     Information to Be Seized by the Government

         All information described above in Section I that constitutes fruits, contraband,

evidence and instrumentalities of violations of Title 15, United States Code, Sections 78j(b) and

78ff, and Title 18, United States Code, Section 1348; mail fraud, in violation of Title 18, United

States Code, Section 1341; wire fraud, in violation of Title 18, United States Code, Section 1343;

conspiracy to commit the above offenses, in violation of Title 18, United States Code, Sections

371 and 1349; and money laundering and money laundering conspiracy, in violation of Title 18,

United States Code, Sections 1956 and 1957, those violations involving Benjamin Conde,

Anthony Conde, Larry Isen and others, and occurring between January 1, 2017 and July 31,

2017, including, for each account or identifier listed on Attachment A1, information pertaining to

the following matters:

         a.      Fraudulent schemes to promote stock of various issuers, engage in market

manipulation relating to those stocks, sell the stocks at a profit and/or launder the proceeds of

those sales using, inter alia, bank and brokerage accounts, relating to Dacona Financial LLC,

Power Traders Press, Trade Masters Pro, My Street Research, Essex Global Investment,

Corporation, Inc. or Facultas Capital Management, LLC or any of those entities' employees,

representatives or affiliates, or Christopher Danzi, Anthony Conde, Benjamin Conde or Larry

Isen or any entities or bank or brokerage accounts associated with any of the foregoing names,

entities or individuals;

         b.      Evidence indicating how and when the email accounts were accessed or

used, to determine the geographic and chronological context of account access, use, and events

relating to the crime under investigation and to the email accounts' owners;

c.      Evidence indicating the email accounts owners' state of mind as it relates to the crimes under investigation;

d.      The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s); and

e.      The identity of the person(s) who communicated with the user IDs about matters relating to the fraudulent scheme described in paragraph (a), including records that help reveal their whereabouts.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF THE SEARCH      Filed Under Seal
OF INFORMATION ASSOCIATED
WITH      ORDER
aconde@essexglobalcapital.com
AND bconde@essexglobalcapital.com
THAT ARE STORED AT      Case No. _____
PREMISES CONTROLLED BY
ENDURANCE INTERNATIONAL
GROUP, INC.

- - - - - - - - - - - - - - - - - - - - - - - - - X

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b),

requesting that the Court issue an Order commanding Endurance International Group, Inc.

(hereafter "Endurance"), an electronic communications service provider and/or a remote

computing service, not to notify any person (including the subscribers or customers of the

accounts listed in the attached search warrant (the "Warrant")) of the existence of the attached

Warrant until further order of the Court.

The Court determines that there is reason to believe that notification of the

existence of the attached Warrant will seriously jeopardize the investigation, including by giving

targets an opportunity to flee or continue flight from prosecution, destroy or tamper with

evidence, change patterns of behavior, or notify confederates. See 18 U.S.C. § 2705(b)(2), (3),

(5).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Endurance shall

not disclose the existence of the attached Warrant, or this Order of the Court, to the listed

subscribers or to any other person, unless and until otherwise authorized to do so by the Court,

except that Endurance may disclose the attached Warrant to an attorney for Endurance for the

purpose of receiving legal advice.

        IT IS FURTHER ORDERED that the application and this Order are sealed until

otherwise ordered by the Court.

February ____, 2019
Central Islip, New York

                          HONORABLE ARLENE R. LINDSAY
                          UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF THE
SEARCH OF INFORMATION
ASSOCIATED WITH li@mbllc.net
THAT IS STORED AT PREMISES
CONTROLLED BY RACKSPACE
US, INC.

- - - - - - - - - - - - - - - - - - - - - - - - - X

Filed Under Seal

ORDER

Case No.  19   108MJ

 

     The United States has submitted an application pursuant to 18 U.S.C. § 2705(b),

requesting that the Court issue an Order commanding Rackspace, Inc. (hereafter "Rackspace"),

an electronic communications service provider and/or a remote computing service, not to notify

any person (including the subscribers or customers of the account listed in the attached search

warrant (the "Warrant")) of the existence of the attached Warrant until further order of the Court.

     The Court determines that there is reason to believe that notification of the

existence of the attached Warrant will seriously jeopardize the investigation, including by giving

targets an opportunity to flee or continue flight from prosecution, destroy or tamper with

evidence, change patterns of behavior, or notify confederates.  See 18 U.S.C. § 2705(b)(2), (3),

(5).

     IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Rackspace shall

not disclose the existence of the attached Warrant, or this Order of the Court, to the listed

subscriber or to any other person, unless and until otherwise authorized to do so by the Court,

except that Rackspace may disclose the attached Warrant to an attorney for Rackspace for the

purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

February ___, 2019
Central Islip, New York

HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH sago310@aol.com
THAT IS STORED AT PREMISES
CONTROLLED BY OATH
HOLDINGS, INC.

Filed Under Seal

ORDER

Case No. 19 108MJ

- - - - - - - - - - - - - - - - - - - - - - - - - X

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b),

requesting that the Court issue an Order commanding Oath Holdings, Inc. (hereafter "Oath"), an

electronic communications service provider and/or a remote computing service, not to notify any

person (including the subscribers or customers of the account listed in the attached search

warrant (the "Warrant")) of the existence of the attached Warrant until further order of the Court.

The Court determines that there is reason to believe that notification of the

existence of the attached Warrant will seriously jeopardize the investigation, including by giving

targets an opportunity to flee or continue flight from prosecution, destroy or tamper with

evidence, change patterns of behavior, or notify confederates.  See 18 U.S.C. § 2705(b)(2), (3),

(5).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Oath shall not

disclose the existence of the attached Warrant, or this Order of the Court, to the listed subscriber

or to any other person, unless and until otherwise authorized to do so by the Court, except that

Oath may disclose the attached Warrant to an attorney for Oath for the purpose of receiving legal

advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until

otherwise ordered by the Court.

February ____, 2019
Central Islip, New York

HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE